GUIDINGER, by guardian *ad litem,* Respondent, vs. SMALLEY MANUFACTURING COMPANY, Appellant.

*January 11—January 30, 1912.*

*Master and servant: Improperly adjusted machine: Injury to servant: Evidence: Finding of jury: Conclusiveness.*

In an action for negligent injury to a servant it is *held* that findings by the jury to the effect that the bursting of a carborundum wheel was caused by a small casting, which plaintiff was grinding, becoming wedged between the face of the wheel and the inner edge of the rest, and that such wedging was due to improper adjustment of the wheel and rest, are supported by the evidence, and that the facts so found are not impossible, demonstrably incorrect, or contrary to unvarying natural laws, so as to warrant interference with the verdict.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The appeal is from a judgment for $2,500 and costs in an action by a servant against the master for negligent injury.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Healy & Joyce* and *E. G. Nash,* and oral argument by *Mr. Nash.*

TIMLIN, J.    Plaintiff, a minor about nineteen years of age and without experience in that line, on July 4, 1909, while engaged in grinding castings on a carborundum wheel in defendant's machine shop, was injured by the bursting of the wheel.    He seeks to recover damages because the defendant failed to instruct or warn him of the dangers attendant upon this work and because the device upon which the castings were held while being ground was improperly adjusted, in that it was too far from the periphery of the wheel.    The plaintiff was at the time engaged in grinding small castings called dogs by holding the same upon a device called a "rest."    The top

of the carborundum wheel revolved toward the plaintiff and toward this "rest," which crossed the face of the wheel at its horizontal diameter. The "rest" was of cast iron faced with a strip of steel on its upper side, and was fastened to the frame of the machine by a slotted extension running at right angles with the "rest." A bolt through the frame of the machine projected through this slot, and the device was held in place and tightened by a nut on this bolt.

The plaintiff testified that the "rest" was at an estimated distance of one quarter of an inch from the face of the wheel, and that in withdrawing the dog from the "rest," after he had finished grinding it, it was carried down and became wedged between the "rest" and the revolving wheel, whereupon the accident occurred. It appeared that the wheel flew in pieces, one of which struck the plaintiff, injuring him severely. He immediately lost consciousness and remained in that condition for several hours. He really does not know what struck him, but there is no doubt that the wheel burst at this point and that he was struck by one of the flying pieces and injured, and he points to a dent in the face of the wheel as apparently made by the dog wedging in between the wheel and the "rest," also to an abrasion on that part of the "rest" facing the wheel. This wheel made 1,900 revolutions per minute, and there is evidence tending to show that if the "rest" was one quarter of an inch from the face of the wheel the machine was in an unsafe condition. The plaintiff was not instructed or warned concerning this danger.

The defendant's counsel contends that this version of the accident is impossible, and presents the evidence of one Druso, an experienced mechanic who used the carborundum wheel in the morning two hours before the plaintiff was hurt, and who testifies that he adjusted the "rest" at an estimated distance of one thirty-second of an inch from the face of the wheel and fastened it there by tightening the above mentioned nut with an S wrench, screwing it down as tightly as he could. He

also attempts to account for the mark or fracture on the face of the carborundum wheel by showing that the fragment of the wheel bearing this mark flew over against some steel castings, and on the corner of one of the latter was found some carborundum or other substance of which the carborundum wheel was in part composed. He also points to the thickness of the dog as evidence that it could not have become wedged as testified to by the plaintiff if the "rest" was one thirty-second of an inch from the face of the wheel, or, he asserts, even if the "rest" was one quarter of an inch from the face of the wheel.

The jury found that one of these dogs became wedged between the face of the wheel and the inner edge of the plate called the "rest" and thereby caused the wheel to break under the strain of the power moving the wheel; that this wedging was due to improper adjustment of the wheel and "rest" by which they were too far apart; that such adjustment rendered the machine not reasonably safe for use by the plaintiff; that it was negligence to permit or direct the plaintiff to use the machine in this condition; that it was negligence to fail to warn or instruct plaintiff of the danger; and that such acts of negligence were the proximate cause of plaintiff's injury.

The edge of the "rest" which is presented to the face of the wheel is not exactly a straight line, because it has been cut into more than one thirty-second of an inch by touching the wheel. The distances of one thirty-second of an inch and one quarter of an inch are estimates. If we assume that the estimate of Mr. Druso is more reliable because of his apparent disinterestedness and his experience, we are in doing so trenching upon the function of the jury. Besides, there is the element of veracity to be considered in all oral testimony, and this is peculiarly for the jury. Upon examination it does not appear impossible for the dog to become wedged if the "rest" was one quarter of an inch from the face of the wheel. The learned counsel for appellant criticises this disposition of the

case by the trial court with learning and keenness. To a mind that loves accuracy, no doubt this somewhat uncertain mode of determining pivotal questions of fact is repellent. It may be criticised, but it is the best available. The difficulty is inherent and ancient, and mankind has struggled with it for centuries, attempting to solve such questions by ordeal, by battle, by compurgation, by sacred relics, by incantations, or by "magotpies and choughs and rooks." Our present mode is to take the collective and unanimous opinion of twelve jurymen. For this court to interfere with or upset the verdict would be to invade the function of the jury without any assurance that the question of fact would be more accurately or justly decided. We consider there is evidence to support the verdict and that the facts found are not impossible nor demonstrably incorrect nor contrary to unvarying natural laws. Some minor assignments of error are made and have been considered and found untenable.

*By the Court.*—Judgment affirmed.